**Burton W. KANTER, Plaintiff,**

**v.**

**DEPARTMENT OF STATE, Defendant.**

**Civ. A. No. 78–0077.**

United States District Court, District of Columbia.

July 25, 1979.

**922**

Cathy Simon-Rose, Melrod, Redman & Gartlin, Washington, D.C., Randall G. Dick, Levenfeld & Kanter, Chicago, Ill., for plaintiff.

Barbara Allen Babcock, Asst. Atty. Gen., Earl J. Silbert, U.S. Atty., Betsy Ginsberg, U.S. Dept. of Justice, Washington, D.C., for defendant.

### MEMORANDUM

OBERDORFER, District Judge.

Plaintiff brings this suit to compel disclosure of certain documents under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

Plaintiff's FOIA request concerns complaints made by the government of the Bahamas regarding an Internal Revenue Service ("IRS") investigation of American taxpayers' use of the Department of State to release all records relating to "the filing of a protest by the government of the Bahamas regarding the attempts by United States agents to suborn the loyalty of Bahamian subjects." *See* Exhibit A to Plaintiff's Complaint (Jan. 17, 1978).

Defendant has identified twenty-two documents responsive to plaintiff's request. The Department initially released seven of these documents and withheld the remainder in whole or in part, claiming applicability of various exemptions under FOIA. Upon further review by defendant's "Committee on Classification Policy," two more documents were released to plaintiff. The documents were reviewed a final time early this year pursuant to Executive Order 12065,[1] and portions of seven of the remaining thirteen documents were disclosed.

### I.

On June 20, 1978, defendant moved for summary judgment. In support of its motion, it filed an affidavit by John Bushnell that described the withheld materials and listed the FOIA exemptions claimed for the undisclosed documents. Plaintiff opposed the motion, arguing that neither Bushnell's affidavit nor defendant's points and authorities established the applicability of any FOIA exemptions. Plaintiff then moved for *in camera* inspection of the documents. The Department of State resisted this motion and submitted an additional affidavit to justify nondisclosure of the documents in question.

On December 5, 1978, the Court filed a Memorandum and Order that granted plaintiff's request for *in camera* inspection of the disputed documents. The Court noted that the Bushnell affidavit was insufficiently detailed to justify application of the (b)(1) national security exemption to nine of the withheld documents. In reaching this conclusion the Court relied on the recent Court of Appeals opinion in *Ray v. Turner*, 190 U.S.App.D.C. 290, 587 F.2d 1187 (1978), which outlined the standards of review for

---

1. Executive Order 12065 describes new standards for the classification of sensitive materials. It became effective on December 1, 1978.

claimed (b)(1) exemptions. The court also requested delivery of those documents for which exemptions (b)(5) and (b)(7) were claimed; the court recognized the probable applicability of those exemptions, but it demanded *in camera* review to insure that defendant had disclosed all non-exempt, segregable portions of the documents.

Defendant subsequently filed a public affidavit of Viron Vaky, further describing those materials claimed to be exempt under (b)(1). Defendant also submitted an *in camera* affidavit detailing the national security concerns related to release of the disputed documents; it submitted the documents themselves *in camera*, pursuant to the court's direction; and it participated in an *in camera* conference at which the Court probed defendant's justification for non-disclosure of the documents.

■ Finally, on May 31, 1979, the Court ordered defendant to comply with § 3–303 of Executive Order 12065. That provision requires that officials who are reviewing documents for possible declassification or FOIA release must, in some cases, determine "whether the public interest in disclosure outweighs the damage to national se-

curity that might reasonably be expected from disclosure."[2] Defendant responded with a supplemental affidavit by Viron Vaky in which Mr. Vaky confirmed that he had balanced the public interest against the damage to national security and found that the documents still at issue in this litigation should not be disclosed.[3] *See* Affidavit of Viron Vaky (July 2, 1979).

## II.

Defendant primarily relies on FOIA exemption (b)(1) to withhold requested documents from the plaintiff. Defendant specifically alleges applicability of (b)(1) to nine of the thirteen documents that have been withheld in whole or in part.[4]

After careful review of the relevant legal standards, and after close scrutiny of defendant's affidavits, and of the documents themselves, the Court finds that (b)(1) properly exempts the materials in question from release under FOIA.

## A. *The (b)(1) Exemption*

5 U.S.C. § 552(b)(1) states that FOIA disclosure requirements do not apply to matters that are:

---

**2.** § 3–303 of Executive Order 12065 provides: "It is presumed that information which continues to meet the classification requirements in Section 1–3 requires continued protection. In some cases, however, the need to protect such information may be outweighed by the public interest in disclosure of the information, and in *these cases the information should be declassified.* When such questions arise, they shall be referred to the agency head, a senior official with responsibility for processing Freedom of Information Act [Section 552 of Title 5, Government Organization and Employees], requests or Mandatory Review requests under this Order, an official with Top Secret classification authority, or the Archivist of the United States in the case of material covered in Section 3–503. That official will determine whether the public interest in disclosure outweighs the damage to national security that might reasonably be expected from disclosure."

**3.** Defendant has moved to strike the portion of this Court's May 31, 1979 Order which states that E.O. 12065 "requires, *inter alia,* that declassifying officials balance the national security damage that will be caused by documents released against the public interest in their disclosure." Defendant contends that the Executive Order does not require this balancing but

merely authorizes it when an agency official deems it appropriate.

The Court denies defendant's motion to strike. In doing so, the Court recognizes that § 3–303 of E.O. 12065 only requires declassification officials to conduct a balancing test "in some cases." The identification of the cases that qualify for balancing is a matter largely within the informed discretion of an agency. Nonetheless, this Court has a special duty under the Freedom of Information Act to carefully scrutinize an agency's procedural compliance with its declassification guidelines. This duty may prompt a Court to ask an agency to engage in the balancing called for under § 3–303 when the Court has reviewed the disputed documents *in camera* and when this *de novo* review of the documents indicates that the information falls in the special class of documents that merits a balancing of the public interest in disclosure against the harm to national security that would result from disclosure. The case now before the Court presents such a situation.

**4.** Defendant also claims that other FOIA exemptions justify non-disclosure of portions of some of the documents. The Court considers the applicability of those exemptions later in this Memorandum.

(A) specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive Order.

As the test of the exemption makes clear, the classification scheme established pursuant to an Executive Order is the starting point for determining whether (b)(1) applies. The Court must analyze whether the documents in question fall within the classification categories of the relevant Executive Order, and whether the information is in fact "properly classified" under the Order.[5] In making this determination, the Court acts de novo; it does not give undue deference to agency decisionmaking, although it may acknowledge the agency's "unique insights into what adverse effects might occur as a result of public disclosure of a particular classified record." See Ray v. Turner, supra, 190 U.S.App.D.C. at 311, 587 F. 22 at 1208.

## B. Application of the (b)(1) Exemption

In the present case, the nine documents that defendant is withholding in whole or in part all are classified as "confidential" under Executive Order 12065. To merit that classification, the Department of State has determined that the documents' unauthorized disclosure "reasonably could be expected to cause identifiable damage to the national security." § 1–104.[6] Section 1–303 states that "[u]nauthorized disclosure of foreign government information . . . is presumed to cause at least identifiable damage to the national security."

█ Applying these principles to the nine documents for which (b)(1) is claimed, the Court finds that non-disclosure of the information is appropriate:

Document # 1. As described in Bushnell's affidavit, and amplified in Vaky's affidavit, document # 1 is a cable from the United States Embassy in Nassau to the State Department. It repeats the text of a diplomatic note received by the Embassy from the government of the Commonwealth of the Bahamas. As explained by Vaky's affidavit, the diplomatic note concerns "the U.S. Government's investigation of tax fraud in the Bahamas," a subject that "continues to be a sensitive matter in our bilateral relations." Vaky affidavit at 3.

The Department of State alleges that release of the text of the diplomatic note would cause "identifiable harm" to our national security. In its public affidavits (Bushnell and Vaky), Department spokesmen emphasize that the Bahamian government expects its communications on the tax fraud investigation to remain private, and that disclosure of the information counter to this expectation may damage national security. In its in camera affidavit, and during the in camera conference, defendant illustrated possible repercussions to the disclosure of the information, identifying specific characteristics of U.S.–Bahamas relations that make unauthorized disclosures of information supplied by the Bahamian government dangerous to national security.

In finding that the information contained in document # 1 is properly withheld under (b)(1), the Court depends on the particulars of the U.S.–Bahamas bilateral relations to justify non-disclosure. Implicit United States assurance that its communications with and about foreign governments will remain confidential may not always shield disclosure of the information, cf. § 1–303 of

5. Plaintiff does not allege that the classification of documents in the instant case suffers from procedural deficiencies (e. g., classification by one not possessing the requisite authority; classification not at the proper time, without conspicuous markings, or without procedures for review and declassification). The Court nonetheless independently has tested defendants' compliance with the procedural requirements under E.O. 12065 and it finds no procedural defects. See note 3, supra.

6. The Department of State's classification of the documents as "confidential" implies that, although their release may cause "identifiable damage" to national security, their release would not be expected to cause "serious damage" to the national security, the prerequisite of a "Secret" classification. Compare § 1–103 with § 1–104.

E.O. 12065, but the sensitive context and content of document # 1 convinces the Court that the information is properly classified as "Confidential" under Executive Order 12065. In reaching this conclusion, the Court recognizes that the Department of State has special insight into potential national security problems, and accordingly the Court has paid close attention to the State Department's *in camera* statements concerning harmful national security consequences that could follow from disclosure of the information in question. Those statements, which describe the strategic location and importance of the Bahamas in relation to the United States and the relatively new and possibly fragile relationships that the United States has developed with that now-independent nation, persuaded the Court that disclosure may identifiably damage national security.

*Document # 9.* This document is another cable from the U.S. Embassy to the Department of State. It summarizes a conference between the Bahamian Minister of Foreign Affairs and the U.S. Ambassador in which the U.S. Ambassador described certain aspects of the IRS investigation into Bahamian tax havens, and in which the Bahamian Minister offered some comments "in strict confidence." The cable concludes with the U.S. Ambassador's candid commentary on the situation.

Once again the Court finds that non-disclosure of this document is appropriate under the classification test in E.O. 12065, § 1–103. *In camera* inspection of the document reveals that it has been well described by defendant's affiants, and that its disclosure may cause "identifiable damage" to national security, especially in light of the sensitive U.S.–Bahamian relations mentioned above.

*Document # 11.* Defendant has withheld paragraphs 3, 4 and 5 of this document under (b)(1). Just as in document # 9, these paragraphs describe a meeting between a Bahamian official and the U.S. Ambassador, and conclude with a commentary and recommendations. The Court finds that their disclosure also might cause "identifiable damage" to national security, especially in view of the nature of U.S.–Bahamian relations, and in light of the State Department's *in camera* detailing of possible repercussions of the disclosure.

*Document # 14.* As described in Viron Vaky's public affidavit, document # 14 "contains information about a foreign relations matter—the anticipated revelation of illegal payments by U.S. companies in the Bahamas—the release of which could reasonably be expected to cause identifiable damage to our national security." *See* Vaky affidavit at 4. The affidavit further explains that disclosure would have a "bombshell" effect, detrimentally affecting U.S.–Bahamas relations.

The Court finds that the disputed paragraphs in Document # 14 are properly classified as "Confidential." The *in camera* review of the document, together with the *in camera* statements of State Department officials who detailed the probable effects of disclosure, has convinced the court that the release of the information may cause "identifiable damage" to national security. The Court notes that State Department officials at the *in camera* conference demonstrated an awareness of and sensitivity toward the relevant classification standard. The Court holds that the information contained in document # 14 properly falls within that standard.

The Court can notice judicially that the nation involved has legalized gambling, serves as a tax haven with banking services appropriate to that function, and lies only a few minutes from United States territory. In these circumstances, failure to disclose in full the details of illegal payment allegations known to the United States as evidenced by document # 14 may well be unwise policy and ultimately may have side-effects more harmful to the national interest than would result from disclosure now. Congress originally enacted the Freedom of Information Act with the general purpose that information like that contained in document # 14 might be disclosed. *See Ray v. Turner, supra,* 190 U.S.App.D.C. at 308–309, 587 F.2d at 1205–1206 (Wright, C. J., concurring).

But Congress also fashioned certain specific exemptions to the disclosure mechanisms of the Act. *See, e. g.*, 5 U.S.C. § 552(b)(1). The information contained in document # 14 is specifically exempt from disclosure because the Executive Branch has determined that its release would cause "identifiable harm" to national security. While that determination is not one that would be agreed to universally, it is not so implausible that a Court, with its limited information and perspective, can lawfully disregard it, even on a *de novo* review. FOIA therefore compels exemption despite defendant's frank admission that the document describes an allegedly illegal payment, despite the Court's impression that "identifiable harm" of a different and more serious nature may later befall the national interest because the document has been withheld and despite possible disagreement as to identifiable harm threatened to the national interest by disclosure.

*Documents # 15, 19.* These documents contain the draft version and final copy of the United States' response to the Bahamian diplomatic note that was quoted in document # 1. For the same reasons as stated above in regard to document # 1, the Court finds that the (b)(1) exemption shields disclosure of this information.

The final paragraph of document # 15 is properly withheld for the same reasons as explained above in regard to document # 14.

*Document # 16.* As described in defendant's affidavits, this document is a cable from the U.S. Embassy in Nassau describing general procedures to be followed by the IRS in conducting investigations in the Bahamas. Paragraphs 1 (excepting the first sentence), 3 and 5(A) and (B) all involve State Department consideration of how to best respond to the information given to the U.S. Ambassador by the Bahamian Foreign Minister. The Foreign Minister's message was set forth in document # 9. These excerpts meet the "Confidential" criteria of E.O. 12065 for the same reasons as expressed above in regard to document # 9.

The remainder of the document deals with investigative techniques, exempt under (b)(7) and discussed later in this Memorandum.

*Document # 18.* Only one short phrase in this document is still classified as "Confidential" by defendant. That phrase refers to the discussion in document # 16 about IRS investigations in the Bahamas and, for the reasons stated with regard to that discussion, is properly exempt from disclosure.

*Document # 22.* Defendant claims that paragraphs 3–7 of this document are properly classified as "Confidential" because they "contain the Embassy's candid assessment of how the tax investigation issue fits into our overall relations with the Bahamas and its recommendations for action." *See* Vaky affidavit at 7. The Court finds, on the basis of the sensitive U.S.–Bahamas relations described by defendant in public and *in camera,* and on the basis of an *in camera* review of the document, that these paragraphs are properly classified as "Confidential"; their release may cause "identifiable damage" to national security. The document addresses the same general issues that are discussed in several of the other documents such as # 1, 15, and 19. Just as the Court was persuaded in those instances that defendant has properly classified the information as "Confidential," it is again so persuaded here.

### III.

■ Defendant also has claimed that FOIA's (b)(7) exemption justifies non-disclosure of portions of the withheld documents. Defendant specifically points to documents # 9, 10, 13, 14, 15, 16, 19 and 21 as qualifying for non-disclosure under (b)(7). Because the Court has already found that the (b)(1) exemption shields those portions of documents # 9, 14, 15 and 19 for which (b)(7) also is claimed, the Court will only examine (b)(7) applicability to documents # 10, 13, 16 and 21.

After careful review of the relevant legal standards, and after close scrutiny of defendant's affidavits, and of the documents

themselves, the Court finds that (b)(7) properly exempts the materials in question from release under FOIA.

### A. The (b)(7) Exemption

5 U.S.C. § 552(b)(7) states, in part, that FOIA's disclosure requirements do not apply to matters that are:

> (7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings . . . (C) constitute an unwarranted invasion of personal privacy . . . (E) disclose investigative techniques and procedures . . . .

█ Subsection (b)(7)(A) generally shields law enforcement records that relate to ongoing investigations and future enforcement proceedings, the disclosure of which would "interfere with those activities." *See generally Mitsubishi Electric Corp. v. Department of Justice*, No. 76–0813 (D.D.C. Apr. 1, 1977).[7] The (b)(7)(C) provision of the exemption protects the identities of persons involved in a law enforcement investigation from disclosure. Subsection (b)(7)(E) permits law enforcement authorities to withhold information about investigative techniques and procedures which are not commonly known, in order that potential targets of investigations cannot use this information to avoid prosecution. *See, e. g., Ott v. Levi*, 419 F.Supp. 750 (E.D.Mo. 1976).

### B. Application of the (b)(7) Exemption

Application of the exemption to the four documents in question finds that the information has been properly withheld.

*Document # 10.* This document is a cable from the U.S. Embassy in Nassau to the State Department. It updates the progress of the IRS investigation in the Bahamas (¶ 1) and describes future plans and difficulties involved in the investigation (¶ 2–5). After *in camera* review of the document the

Court concludes that the information is exempt under (b)(7)(A) and (b)(7)(E). The document's disclosure would affect the ongoing IRS tax investigation in the Bahamas (a grand jury is reportedly hearing evidence relating to the investigation); the document's candid assessment of certain investigative difficulties would, if disclosed, "frustrate the proceedings or construct defenses which would permit violations to go unremedied." *See New England Medical Center Hospital v. National Labor Relations Board*, 548 F.2d 377, 382 (1st Cir. 1977). No segregable portions of the document fall outside the bounds of the exemption.

*Document # 13.* Paragraphs 1–3 of this document describe the progress of the IRS investigations in the Bahamas, and include non-segregable references to persons involved in the investigation, problems that have arisen in the investigation, and future procedures to be followed by IRS investigators. The Court accordingly finds that this information is exempt under (b)(7)(C), (b)(7)(A) and (b)(7)(E), respectively. The final two paragraphs of the cable discuss the impact of some specific information that the investigation has uncovered. The information focuses on a matter that is being considered by a grand jury, *see* affidavit of Robert Cimino at 4, and that concerns an individual whose privacy would be invaded if the Court were to permit disclosure. The Court therefore concludes that the material in the final two paragraphs of this document are exempt under (b)(7)(A) and (b)(7)(C).

*Document # 16.* As discussed above, most of this document is exempt under (b)(1). Paragraphs 2, 4 and 5(C) and (D), however, all specifically discuss proposed investigative techniques for IRS law enforcement investigations in the Bahamas. An *in camera* inspection of the passages convinces the Court that the information falls squarely under exemption (b)(7)(E), with no segregable portions qualifying for disclosure.

*NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 232, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978). That requirement has been met in this case. *See* Cimino Affidavit at ¶¶ 4–7.

---

7. In order to qualify as records that are "compiled for law enforcement proceedings," the records need to be compiled for an "actual, contemplated enforcement proceeding."

*Document # 21.* Defendant has withheld the final sentence of this document, claiming applicability of (b)(7)(E).[8] Upon *in camera* review of the sentence, the Court finds that it contains a State Department comment on tax investigation techniques in the Bahamas, and therefore the short statement is properly exempt under (b)(7)(E).

## IV.

Defendant contends that FOIA's (b)(5) exemption properly shields disclosure of portions of the documents requested by plaintiff. Most of the information allegedly exempted under (b)(5) is properly withheld under other FOIA exemptions.[9] The Court need only consider whether document # 17 is nondisclosable under (b)(5).

### A. *The (b)(5) Exemption*

5 U.S.C. § 552(b)(5) states that FOIA's disclosure requirements do not apply to matters that are:

> (5) inter-agency or intra-agency memorandum or letters which would not be available by law to a party other than an agency in litigation with the agency.

### B. *Application of the (b)(5) Exemption to Document # 17*

Document # 17 falls squarely within the (b)(5) exemption. It is an inter-office memorandum of the State Department Office of the Legal Adviser that discusses the proposed response to the Bahamian diplomatic note described in Document # 1. An *in camera* inspection of the document reveals that it "reflect[s] . . . advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated." *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 150, 95 S.Ct. 1504, 1516, 44 L.Ed.2d 29 (1975).

An appropriate order follows this Memorandum.

---

**8.** Defendant also contends that (b)(5) shields disclosure of the sentence, but the applicability of the (b)(7)(E) exemption moots that question.

**9.** The Court recognizes that claims for multiple exemptions frequently are a defect of agency affidavits. *See Ray v. Turner, supra,* 190 U.S. App.D.C. at 298–299, 587 F.2d at 1195–1196.

*In camera* review of the documents involved in this case, however, revealed that multiple exemptions do apply to certain portions of the withheld information. The Court nonetheless has relied on only one exemption for any exempted material.