Burton L. **APPLETON**, Plaintiff,

v.

**FOOD AND DRUG ADMINISTRATION** and Department of Health and Human Services, Defendants.

Civil Action No. 02–1043 (RMU).

United States District Court, District of Columbia.

Aug. 21, 2006.

Burton L. Appleton, Alexandria, VA, pro se.

Fred Elmore Haynes, U.S. Attorney's Office, Andrew B. Katz, Fox Rothschild LLP, Russell James Gaspar, Cohen Mohr LLP, Scott Allan Hodes, Meredith Manning, Steven John Routh, Hogan & Hartson L.L.P., Amy Miller, McGuirewoods LLP, Washington, DC, Ronald Lee Grudziecki, Burns, Doane, Swecker & Mathis, Alexandria, VA, Charles J. Raubicheck, Frommer Lawrence & Haug, LLP, New York, NY, for Defendants.

## MEMORANDUM OPINION

URBINA, District Judge.

### GRANTING THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

The *pro se* plaintiff Burton Appleton, a former Food and Drug Administration ("FDA") chemist, brings this action to compel the FDA and the Department of Health and Human Services ("HHS") to provide numerous documents concerning the drug levothyroxine sodium ("LEVO") pursuant to the Freedom of Information Act ("FOIA"). This case is before the court on the defendants' motion for summary judgment. Because defendant FDA's search for responsive documents was adequate, and because the defendants have properly invoked Exemptions 4, 5, 6, and 7(c) of FOIA, the court grants the defendants' motion for summary judgment.

## II. BACKGROUND

### A. Factual Background

In September 2001, the plaintiff submitted a FOIA request to the FDA, seeking "any and all records concerning communications 1) between the [FDA] and the United States Pharmacopeia ['USP'] . . . and 2) within the FDA on the subject of the drug levothryoxine sodium." Compl., Ex. 1. Specifically, he asked for communications regarding orally administered and injectable dosage forms of the drug, including letters, faxes, e-mails, memoranda, and directives, dating from August 14, 1997 to the present. *Id.*

In response to the plaintiff's request,[1] on November 1, 2001, the FDA sent a letter to the plaintiff indicating that information on a certain relevant new drug application (Unithroid) was available on the FDA's website, that information on another relevant new drug application (Levoxyl) required redaction before release, and that a search was underway for the FDA/USP communications. Defs.' Mot. for Summ. J. ("Defs.' Mot.") at 3. On December 7, 2001, the FDA sent the plaintiff redacted information on the Levoxyl application. *Id.* Also, on January 2, 2002, the FDA forwarded material on FOIA law and regulations to the plaintiff.[2] Compl., Ex. 2.

On January 25, 2002, the plaintiff wrote to the FDA to raise concerns regarding the agency's responses, and to amend his original request. Defs.' Mot. at 3. Specifically, the plaintiff highlighted what he believed to be various insufficiencies in the FDA responses, such as inaccurate paraphrasing of his request, missing documents and unnecessary redactions. *Id.*, Ex. A. ("Sagar Decl.") ¶ 14. He also amended his request to enlarge the time frame from August 14, 1997 to "the first time that the FDA began to look into the regulation of the drug." *Id.* At the same time, he clarified the parameters of his request; stating, for example, that his request was intended to focus primarily on chemistry

information, with biopharmaceutical information requested only insofar as it invoked analytical chemistry methodology not elsewhere disclosed. *Id.*

After receiving no response from the FDA, on March 26, 2002, the plaintiff faxed a letter to the HHS to appeal the FDA's denial of his FOIA request. *Id.,* Ex. 15. On May 8, 2002, after receiving no substantive response to his March letter, the plaintiff again wrote to the HHS to stress what he believed were the FDA's "repeated failures" to abide by FOIA and to ask for information in order to avoid "go[ing] to federal district court prematurely." Sagar Decl., Ex. D.

### B. Procedural History

On May 29, 2002, the plaintiff filed a complaint with this court. On July 1, 2002, the defendants filed a partial answer accompanied by a motion requesting an *Open America*[3] stay of proceedings through March 15, 2004. On February 27, 2003, this court granted the defendants' motion in part, held the production of documents in abeyance, and ordered the parties to meet and clarify the scope of the plaintiff's FOIA requests. *Appleton v. FDA,* 254 F.Supp.2d 6, 11–12 (D.D.C. 2003).

On March 24, 2002, the court granted leave to intervene to Jerome Stevens

---

1. Between November 2001 and March 2002, the plaintiff also called various Food and Drug Administration ("FDA") officials discussed the status of his request. Defs.' Mot. for Stay Ex. 2 at 12 n. 3; Pl.'s Opp'n to Defs.' Mot. for Stay at 31.

2. The January 2, 2002 correspondence may have been in response to a separate December 14, 2001 request by the plaintiff pursuant to the Freedom of Information Act ("FOIA"). Pl.'s Opp'n to Defs.' Mot. for Stay, Ex. 11.

3. Pursuant to FOIA, an agency that has received a request for records must respond to that request within twenty working days of

the date of receipt of the request. 5 U.S.C. § 552(a)(6)(A). To prevent this deadline from becoming rigid and unworkable, however, Congress inserted a special "safety valve." *Open Am. v. Watergate Special Prosecution Force,* 547 F.2d 605, 610 (D.C.Cir.1976). Specifically, Congress provided that "[i]f the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records." 5 U.S.C. § 522(a)(6)(C)(i).

Pharmaceuticals, Inc. ("Jerome Stevens"), Jones Pharma, Inc. ("Jones"), and Abbott Laboratories ("Abbott"). Additionally, on June 1, 2004, the court granted leave to intervene to Alara Pharmaceutical Corporation ("Alara"). On November 30, 2004, the FDA filed a motion for summary judgment.[4] It is to this motion that the court now turns.

## III. ANALYSIS

### A. Legal Standard for Summary Judgment in a FOIA Case

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C.Cir.1995). In deciding whether there is a genuine issue of material fact, the court is to view the record in the light most favorable to the party opposing the motion, giving the nonmovant the benefit of all favorable inferences that can reasonably be drawn from the record and the benefit of any doubt as to the existence of any genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

■■■ FOIA affords the public access to virtually any federal government record that FOIA itself does not specifically exempt from disclosure. 5 U.S.C. § 552; *Vaughn v. Rosen*, 484 F.2d 820, 823 (D.C.Cir.1973). FOIA confers jurisdiction on the federal district courts to order the release of improperly withheld or redacted information. 5 U.S.C. § 552(a)(4)(B). In a judicial review of an agency's response to a FOIA request, the defendant agency has the burden of justifying nondisclosure, and the court must ascertain whether the agency has sustained its burden of demonstrating that the documents requested are exempt from disclosure under FOIA. 5 U.S.C. § 552(a)(4)(B); *Al–Fayed v. CIA*, 254 F.3d 300, 305 (D.C.Cir.2001); *Summers v. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C.Cir.1998). An agency may meet this burden by providing the requester with a *Vaughn* index, adequately describing each withheld document and explaining the exemption's relevance. *Summers*, 140 F.3d at 1080; *Vaughn*, 484 F.2d 820 (fashioning what is now commonly referred to as a "Vaughn index").

■■■ The court may grant summary judgment to an agency on the basis of its affidavits if they:

[ (a) ] describe the documents and the justifications for nondisclosure with reasonably specific detail, [(b)] demonstrate that the information withheld logically falls within the claimed exemption, and [(c)] are not controverted by either con-

---

**4.** Jones Pharma, Inc. ("Jones"), Abbott Laboratories ("Abbott"), Alara Pharmaceutical Corporation ("Alara"), and Lloyd Incorporated have also filed motions for summary judgment, in essence, urging the court to find in favor of the FDA, and for many of the same reasons articulated by the FDA. To the extent that the interveners' motions illuminate the court's analysis, the court will cite to them.

trary evidence in the record nor by evidence of agency bad faith.

*Military Audit Project v. Casey,* 656 F.2d 724, 738 (D.C.Cir.1981). While an agency's affidavits are presumed to be in good faith, a plaintiff can rebut this presumption with evidence of bad faith. *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n,* 926 F.2d 1197, 1200 (D.C.Cir.1991) (citing *Ground Saucer Watch, Inc. v. CIA,* 692 F.2d 770, 771 (D.C.Cir.1981)). But such evidence cannot be comprised of "purely speculative claims about the existence and discoverability of other documents." *Id.*

## B. The FDA's Search was Reasonable

### 1. Legal Standard for FOIA Adequacy of Agency Search

 "A requester dissatisfied with the agency's response that no records have been found may challenge the adequacy of the agency's search by filing a lawsuit in the district court after exhausting any administrative remedies." *Valencia–Lucena v. U.S. Coast Guard,* 180 F.3d 321, 326 (D.C.Cir.1999). To prevail on summary judgment, "the agency must demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Nation Magazine v. U.S. Customs Serv.,* 71 F.3d 885, 890 (D.C.Cir.1995) (internal quotations and citations omitted). An agency must search for documents in good faith, using methods that are reasonably expected to produce the requested information. *Valencia–Lucena,* 180 F.3d at 326 (citing *Oglesby,* 920 F.2d at 68). The principal issue is not whether the agency's search uncovered responsive documents, but whether the search was reasonable. *Oglesby,* 920 F.2d at 67 n. 13 (citing *Meeropol v. Meese,* 790 F.2d 942, 952–53 (D.C.Cir.1986)); *Moore v. Aspin,* 916 F.Supp. 32, 35 (D.D.C.1996). The agency need not search every record in the system or conduct a perfect search.

*SafeCard Servs.,* 926 F.2d at 1201; *Meeropol,* 790 F.2d at 952, 956. Nor need the agency produce a document where "the agency is no longer in possession of the document[ ] for a reason that is not itself suspect." *SafeCard Servs.,* 926 F.2d at 1201.

 Instead, to demonstrate reasonableness, the agency must set forth sufficient information in affidavits for the court to determine, based on the facts of the case, that the search was reasonable. *Nation Magazine,* 71 F.3d at 890 (citing *Oglesby,* 920 F.2d at 68). While an agency's affidavits are presumed to be in good faith, a plaintiff can rebut this presumption with evidence of bad faith. *SafeCard Servs.,* 926 F.2d at 1200. But such evidence cannot be comprised of "purely speculative claims about the existence and discoverability of other documents." *Id.* If the record raises substantial doubts regarding the agency's efforts, "particularly in view of well defined requests and positive indications of overlooked materials," summary judgment is not appropriate. *Valencia–Lucena,* 180 F.3d at 326 (internal quotations and citations omitted).

### 2. The FDA's Search for Responsive Documents

The FDA asserts that it conducted several reasonable searches for responsive documents in response to plaintiff's FOIA requests. Defs.' Mot. at 12–18. As a matter of course, the FDA refers FOIA requests concerning human drugs to its Division of Information and Disclosure Policy ("DIDP") in the FDA's Center for Drug Evaluation and Research ("CDER"). Defs.' Mot. at 8, 12. Because the plaintiff's FOIA request was broad and extensive, the FDA directed its Office of the Chief Counsel ("OCC"), the Office of Regulatory Affairs ("ORA"), and the Office of Criminal Investigations ("OCI") to conduct

their own searches for responsive documents. *Id.* The FDA asserts that the searches conducted by these individual agency divisions were reasonable, and provides several affidavits in support.

### a. The Division of Information and Disclosure Policy's Search for Responsive Documents

Affiant Nancy Sagar, the Director of the DIDP, maintains that the search for responsive documents conducted by the DIDP was reasonable. *See generally,* Sagar Decl. Upon receiving the plaintiff's FOIA request, the DIDP categorized the information sought as either "simple" or "complex." [5] *Id.* ¶ 16. The FOIA requests for information that "had already been processed for public disclosure and [constituted] publicly available information" were all classified as simple. *Id.* By contrast, the DIDP categorized those requests that sought "chemistry reviews of new drug applications ('NDAs'), abbreviated new drug applications ('ANDAs'), drug master files ('DMFs') for the active pharmaceutical ingredients of levothyroxine sodium, as well as the DMFs and chemistry, manufacturing, and controls ('CMC') sections of NDAs and ANDAs in their entirety" as complex. *Id.* ¶ 19. Following this review,

> DIDP coordinated efforts with at least ten other CDER offices to locate documents responsive to the parts of Plaintiff's request considered complex ... searched files or contacted individuals in those officer and directed them to search paper files and electronic records for responsive documents ... [and]

gathered the documents and then conducted a preliminary review of the records to verify that they were responsive[.]

*Id.* ¶ 19. The documents were then bates-stamped, indexed, and reviewed page-by-page, line-by-line to determine whether any FOIA exemptions applied. *Id.* Ms. Sagar asserts that "[a]ny exempt material was withheld, and a *Vaughn* index was created to reflect all redactions and the corresponding claims of exemption. A team leader conducted a quality control review of the responsive documents to ensure that the documents and the *Vaughn* index had been properly prepared for public disclosure." *Id.* (italics in original). The remaining documents, and a *Vaughn* Index accompanied each disclosure. *Id.*

### b. The FDA District Offices' Searches for Responsive Documents

Affiant Sharon Sheehan, a Regulatory Counsel in the Division of Compliance Policy ("DCP") in the FDA, attests to the searches conducted by the FDA district offices. Defs.' Mot., Ex. C, ("Sheehan Decl."). Sheehan coordinated the response to the plaintiff's FOIA request in the district offices. *Id.* ¶ 4. According to Sheehan, although each district office handles FOIA requests independently,

> FOIA personnel in each district office that received Plaintiff's requests searched their paper files, electronic filing systems, and off-site archives for responsive documents (for example, files searched included FDA inspection records (e.g., official establishment files),

---

5. According to Sagar, the Division of Information and Disclosure Policy ("DIDP"), as a matter of course, first determines whether a request is complex or simple. A complex request is defined as requests that "involve voluminous records and require substantive input from supervisory staff to determine both the scope of the search and releasability,"

Defs.' Mot. for Summ. J., Ex. A, ("Sagar Decl.") ¶ 10. A simple request is a request that "do[es] not require DIDP personnel to redact documents" because "the information requested is publicly available, or it is apparent that the information does not exist[ ] in CDER's records." *Id.* ¶ 8.

correspondence, product recall records, and laboratory records). The FOIA personnel reviewed the documents and made redactions per applicable FOIA exemptions. The Atlanta District, Chicago District, Cincinnati District, Denver District, Florida District, Philadelphia District, San Francisco District, San Juan District, and St. Louis Branch found responsive documents. The Dallas District, New York District, and Seattle District found no responsive documents.

*Id.* ¶ 9. The Sheehan declaration then describes how the documents found during these district offices' searches are reviewed by the FDA's Office of the Chief Counsel ("OCC"). *Id.* ¶ 10. All responsive documents are bates stamped, a *Vaughn* Index is created, and documents are disclosed without redactions, disclosed with redactions, or withheld in their entirety. *Id.* ¶ 10.

### c. The Office of the Chief Counsel's Search for Responsive Documents

Because the plaintiff requested "documents relating to two court cases," and "all documents within FDA that related to the active ingredient" in LEVO, the FDA's main FOIA office asked the OCC to perform a search for responsive documents. Defs.' Mot. at 15; Defs.' Mot., Ex. B, ("Beckerman Decl.") ¶ 5. The Beckerman declaration details the procedures the OCC employs in conducting searches pursuant to a FOIA request. Specifically, once a FOIA request is made,

it is logged in, an information disclosure attorney is assigned to the request, and a scanned copy of the FOIA request is sent via e-mail to all OCC attorneys and staff. Each attorney and staff person searches his or her paper files and electronic records for responsive information. Responsive documents are copied,

reviewed by an attorney for information that may be exempt from disclosure, and then collected by the information disclosure attorney assigned to the request. If, as in Plaintiff's case, litigation is involved, the documents are bates-stamped and a *Vaughn* index is created.

*Id.* ¶ 4. In applying this process, the OCC identified information that was responsive to the plaintiff's request and any information that was found to be exempt from disclosure was withheld. *Id.* ¶ 5. The OCC produced two redacted documents, and withheld approximately thirteen documents, *id.* ¶ 7, and these disclosures were accompanied by a *Vaughn* Index, *id.* ¶ 6.

### d. The Office of Criminal Investigations' Search for Responsive Documents

The Freedom of Information Office of the FDA requested that the OCI conduct a search for responsive documents to the plaintiff's FOIA requests. Defs.' Mot. at 16. This request was not included in the FDA's initial search, but was added on July 7, 2004. *Id.* According to affiant Sheehan,

[w]hen OCI receives a FOIA request, the request is logged in, the database is searched to determine if any information is present and whether there is an open or a closed investigation. If an investigation has been generated, the case agent or the special agent in charge in the appropriate field office is contacted to determine the status of the case. Depending upon the information requested and the volume of material to be reviewed, the OCI field office or OCI headquarters handles the FOIA request. In most cases, a FOIA Officer will review, redact according to FOIA exemptions, and send the information to the requester. In this case, the agent who logged in the request also performed the

search for responsive documents. Approximately 12 inches of records were found and, after performing a cursory review of the records, the agent determined that all evidentiary material had been returned to the targeted company (according to standard procedures) and all that remained was the case file. OCI notified [the OCC] of the search results and provided OCC with a copy of the case filed (311 unredacted documents) on or about July 16, 2004, for review and redaction, as needed.

Sheehan Decl. ¶ 12. After negotiations with the plaintiff to narrow the scope of the document production, the OCC bates-stamped and indexed approximately 44 documents and produced them to the plaintiff with a *Vaughn* Index. *Id.* ¶ 13.

### 3. The FDA's Search for Responsive Documents was Reasonable

■ The defendants contend that their searches were reasonable. Defs.' Mot. at 11–12. As quoted above, the defendants have provided the court with the declarations of three officers who attest to the procedures conducted by the FDA in response to the plaintiff's FOIA requests. These declarations provide detailed information of the procedures undertaken by the FDA divisions and branch offices in response to the plaintiff's request. From these affidavits, the court is confident that the FDA "made a good faith effort to conduct a search for the requested documents, using methods which can be reasonably expected to produce the information requested." *Oglesby,* 920 F.2d at 68. The agency utilized different procedures tailored to the different requests made by the plaintiff and the different agency branches tasked with undertaking the

searches. *See generally,* Sagar Decl.; *see generally,* Beckerman Decl.; *see generally,* Sheehan Decl. The three affidavits provided by the FDA are "relatively detailed, nonconclusory and submitted in good faith." *Miller,* 779 F.2d at 1383 (stating that "an agency may prove the reasonableness of its search through affidavits").

■ Because the agency has demonstrated that the searches were reasonable, the burden shifts to the plaintiff to prove otherwise, either by providing evidence that undermines the search procedure or by demonstrating bad faith. *Id.* The plaintiff states that "[p]laintiff's reaction to FDA's treatment of his FOIA request is not only to raise the issue of sheer incompetence of FDA personnel, but also to detect a whiff of bad faith." Pl.'s Opp'n ¶ 4. The plaintiff's olfactory perceptions are irrelevant and constitute "merely speculative claims," legally insufficient to contradict the defendants' account. *SafeCard,* 926 F.2d at 1200. Furthermore, the plaintiff characterizes the "FDA response to his FoIA request as Pavlovian. It is Visceral [sic]. It is Orwellian. (Division of Information *Disclosure* Policy is right out of *Animal Farm* and *1984* )." *Id.* (emphasis in original). These fanciful and conclusory remarks, while entertaining in their clever reference to popular media and use of science experiment based adjectives, do nothing to undermine the court's confidence, from the detailed description of the three affiants, that the FDA's search was reasonable. *SafeCard,* 926 F.2d at 1200.

### C. The FDA's Withholding Pursuant to the FOIA Exemptions[6]

■ The defendants withheld documents and portions of documents pursuant

---

**6.** The plaintiff has indicated that he is no longer seeks documents 1, 4–5, 8–10, 12–16, 20–23, 47–48, 52, 54, 58–59, 68, 71–78, 80–

99, Pl.'s Opp'n ¶ 45, 203, 263, 265, 268, 269, 271, 274–279, 281–283, 23, 40, 80, 106, 188–

to FOIA exemptions 4, 5, 6, and 7(C). Defs.' Mot. at 20. A court cannot grant summary judgment unless the defendants' *Vaughn* Index provides a detailed description of the withheld information, the exemption claimed for withholding the information, and the reasons supporting the application of the exemption to the withheld material. *Vaughn*, 484 F.2d at 827. Agency statements in the *Vaughn* Index cannot support summary judgment if they are "conclusory, merely reciting statutory standards, or if they are too vague or sweeping." *Oglesby*, 79 F.3d at 1176. Additionally, "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent. Inc., v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C.Cir.1977). This requirement is known as the segregability requirement. *Schiller v. NLRB*, 964 F.2d 1205, 1209 (D.C.Cir.1992). Finally, if the defendants have withheld information on the basis of multiple exemptions, the court need only rely on one exemption for each piece of exempted material. *Kanter v. Dep't of State*, 479 F.Supp. 921, 928 n. 9 (D.D.C. 1979).

### 1. Exemption 4 Withholdings

■ Exemption 4 of FOIA protects "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential." 5 U.S.C. § 552(b)(4). Specifically, the defendants rely on Exemption 4 to withhold in whole or in part documents 60, 62, 86, 88, 179–182, 185, 209–211, 223–226, 228, 229, 230, 236, 262, 279, 284–286, 288–294, 296–325B, 327–330, 332, 333, 335, 337–340, 342, 345, 337–340, 342, 345–347B, 350–355, 357, 371–388, 390, 393–399, 401–403, 406, 407, 409–413, 415–417, 419–482, 484–487, 489–490, 492–495, 497, and 498. Sagar Decl. ¶ 27. The defendants have succeeded in demonstrating that these documents are properly withheld under Exemption 4 as trade secret information. For example, these documents contain information consisting of drug product manufacturing information, including manufacturing processes or drug chemical composition and specifications.[7] *See* Sagar Decl. ¶ 30–32; Intervenor Abbott's Mot. for Summ. J., Ex. A., ("Garren Decl.") ¶ 38, 43–67, 70, 72, 75, 76. The *Vaughn* Index provides additional detail for each document withheld. *See* Defs.' Mot., Ex. A, Ex. G., ("*Vaughn* Index"). Release of this information would reveal how the drug being discussed in the document "is formulated, chemically composed, manufactured, and quality controlled," and is therefore properly withheld under Exemption 4. *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 93 F.Supp.2d 1, 8–9 (D.D.C.2000). The plaintiff contends that the defendants' reliance on Exemption 4 is "willy nilly," yet provides no evidence to support his conclusion. Pl.'s Mot. ¶ 11. Furthermore, assuming *arguendo* that the plaintiff made a showing of "willy nilly," the court knows of no legal authority suggesting that the

---

199, 201, 204–208, 213, 215, or 249, *id.* ¶ 40, 42.

7. Additionally, these documents were created by drug manufacturers, submitted to the FDA as part of the NDA and ANDA approval process, and include "information regarding third-party laboratories or contractors/consultants, evidence of the product's safety and effectiveness obtained through preliminary research and human clinical trials, evidence of

side effects and their magnitude," Sagar Decl. ¶ 30, "the chemical stability characteristics of the drug, the method of drug synthesis, specifications of the finished drug product, the source and specifications for the components and raw materials, and ... analytical methods used for the drug and drug components, which are used by the manufacturers to ensure the identity, strength, quality, and purity of the drug substance," *id.* ¶ 31.

plaintiff has the burden of demonstrating "willy nilly," or that such a showing is sufficient to undermine a detailed declaration and an even more detailed *Vaughn* Index.[8] Because the documents withheld by the FDA under an invocation of Exemption 4 is proper, the court grants the defendants' motion for summary judgment as to these documents.

## 2. Exemption 5 Withholdings

■■ Exemption 5 of FOIA protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The Supreme Court and the D.C. Circuit both have construed Exemption 5 to "exempt those documents, and only those documents, normally privileged in the civil discovery context." *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.,* 421 U.S. 132, 149, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975); *Martin v. Office of Special Counsel,* 819 F.2d 1181, 1184 (D.C.Cir.1987). In other words, Exemption 5 incorporates "all civil discovery rules." *Martin,* 819 F.2d at 1185. Thus, all discovery privileges that exist in civil discovery apply to Exemption 5. *United States v. Weber Aircraft Corp.,* 465 U.S. 792, 800, 104 S.Ct. 1488, 79 L.Ed.2d 814

(1984). The three traditional privileges that courts have incorporated into Exemption 5 are the deliberative-process privilege, the attorney work-product privilege and the attorney-client privilege. *Sears,* 421 U.S. at 149, 95 S.Ct. 1504. The defendants have invoked all three privileges in support of its decision to withhold documents.

## a. Deliberative Process Privilege

■■ The general purpose of the deliberative-process privilege is to "prevent injury to the quality of agency decisions." *Sears,* 421 U.S. at 151, 95 S.Ct. 1504. The three specific policy objectives underlying this privilege are: (1) to encourage open, frank discussions on matters of policy between subordinates and superiors; (2) to protect against premature disclosure of proposed policies before they are finally adopted; and (3) to protect against public confusion that might result from disclosure of reasons and rationale that were not in fact ultimately the grounds for an agency's action. *Russell v. Dep't of Air Force,* 682 F.2d 1045, 1048 (D.C.Cir.1982); *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 866 (D.C.Cir.1980); *Jordan v. Dep't of Justice,* 591 F.2d 753, 772–73 (D.C.Cir.1978) (en banc). In essence, the privilege protects the "decision making

---

**8.** The plaintiff also attempts to construct an argument based on the definition of "trade secret" as provided by the D.C. Circuit in *Public Citizen Health Research Group v. FDA,* 704 F.2d 1280, 1288 (D.C.Cir.1983), questioning "what could possibly be 'innovative' or 'substantial effort' about a process that is purchased and that is known so widely, if not universally, to the pharmaceutical industry and to the defendants?" Pl.'s Mot. ¶ 20. The plaintiff misreads *Public Citizen,* suggesting that it requires a sole showing of "innovation or substantial effort." While this phrase does appear in *Public Citizen,* the plaintiff takes this phrase out of context, wholly ignoring the antecedent qualifying language. *Public Citizen* states that the definition of trade secret

applies to information that constitutes the "*end product* of either innovation or substantial effort." *Public Citizen,* 704 F.2d at 1288 (emphasis added). The D.C. Circuit's opinion in *Public Citizen* is not a proper subject for this doctor-plaintiff's textual triage. To be sure, the definition of "trade secret" in *Public Citizen* is said to "incorporate[ ] a direct relationship between the information at issue and the productive process." *Id.* Thus, while the plaintiff is correct in inferring that the FDA did not, itself, create the information sought, it nonetheless flows directly from the development and composition of drug products and as such, is unequivocally the "end product of either innovation or substantial effort." *Id.*

processes of government agencies and focus[es] on documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Sears,* 421 U.S. at 150, 95 S.Ct. 1504 (internal quotations omitted). Thus, the deliberative-process ensures that government agencies are not "forced to operate in a fishbowl." *Petroleum Info. Corp. v. Dep't of the Interior,* 976 F.2d 1429, 1434 (D.C.Cir.1992).

 To invoke the deliberate-process privilege, the defendants must establish two prerequisites. *Id.* First, the communication must be "predecisional"; in other words, it must be "antecedent to the adoption of an agency policy." *Jordan,* 591 F.2d at 774; *Access Reports v. Dep't of Justice,* 926 F.2d 1192, 1194 (D.C.Cir.1991). In determining whether a document is predecisional, an agency does not necessarily have to point specifically to an agency's final decision, but need only establish "what deliberative-process is involved, and the role played by the documents in issue in the course of that process." *Coastal States,* 617 F.2d at 868. In other words, as long as a document is generated as part of such a continuing process of agency decision-making, the deliberative-process protections of Exemption 5 may be applicable. *Id.; Nat'l Ass'n of Home Builders v. Norton,* 309 F.3d 26, 39 (D.C.Cir.2002) (holding that a document is predecisional if it was prepared to assist an agency in arriving at a decision, rather than supporting a decision already made).

 Second, the communication must be deliberative; it must be "a direct part of the deliberative-process in that it makes recommendations or expresses opinions on legal or policy matters." *Vaughn,* 484 F.2d at 823–24. The critical factor in determining whether the material is deliberative in nature "is whether disclosure of the information would 'discourage candid discussion within the agency.'" *Access Reports,* 926 F.2d at 1195 (quoting *Dudman Commc'n Corp. v. Dep't of Air Force,* 815 F.2d 1565, 1567–68 (D.C.Cir.1987)).

 The defendants are successful in demonstrating that documents it claims are exempt are properly withheld under the deliberative process privilege for documents. These documents consist of communications between FDA employees concerning various draft procedures and courses of action.[9] All of these documents are predecisional because they were made "antecedent to the adoption of an agency policy." *Jordan,* 591 F.2d at 774. Addi-

---

**9.** Specifically, they concern exchanges of thoughts, ideas, and documents regarding LEVO drugs, *Vaughn* Index, doc. nos. 80, 106, reasons behind the FDA's position for proposed USP revisions, *id.* at doc. nos. 23, 40, decisions regarding approval of applications, *id.* at doc. nos. 187, 189, 191, developing future protocols for LEVO studies, *id.* at doc. nos. 188, 190, 192, 195, 201, 205, 206, 215, responses to citizen petitions, *id.* at doc. nos. 193, 214, internal discussions and draft guidance documents regarding LEVO bioequivalence studies, *id.* at doc. nos. 196–199, 204, 208, 213, 249, 254, potential agency action regarding regulatory or enforcement actions, *id.* at doc. nos. 230, 235, 239, 244, 247, 248, 295, Vintage's proposed audit protocol and schedule, *id.* at doc. nos. 231, 238, draft document regarding "refuse to file decision memo," *id.* at doc no. 212, procedures for recall of LEVO products, *id.* at doc. no. 232, comments and concerns on draft bioequivalence report, *id.* at doc. no. 207, agency action on issuance of warning letters, *id.* at doc. no. 228, draft documents not intended to reflect the final position of the agency, *id.* at doc. no. 229, draft letters containing individual authors' thoughts rather than agency positions, *id.* at doc. nos. 237, 243, descriptions of manufacturing processes, *id.* at doc. nos. 292, 293, 297, memorializations of discussions among FDA personnel or recommendations from FDA to another agency, *id.* at doc. nos. A33–A42, A100, A102; Beckerman Decl. ¶ 14.

tionally, because all of these documents "make[ ] express recommendations or express opinions on legal or policy matters," *Vaughn*, 484 F.2d at 823–824, they are properly withheld under Exemption 5's deliberative process exception.

### b. Attorney–Client Privilege

▉▉▉ The attorney-client privilege protects "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." *Mead Data Cent., Inc.*, 566 F.2d at 252. The rationale underlying the privilege is that lawyers will be best able to advocate and offer advice if they are "fully informed by the client." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981).

▉▉▉ Unlike the attorney work-product privilege, the attorney-client privilege is not limited to the context of litigation. *See, e.g.*, *Mead Data Cent., Inc.*, 566 F.2d at 252–53; *Crooker v. Internal Revenue Serv.*, No. 94–0755, 1995 WL 430605, at *7 (D.D.C. Apr.27, 1995). Although it principally applies to facts divulged by a client to his attorney, the privilege also encompasses any opinions given by an attorney to his client based on those facts as well as communications between attorneys

that reflect client-supplied information. *See Coastal States*, 617 F.2d at 863 (finding that courts can infer confidentiality when the communications suggest that "the government is dealing with its attorneys as would any private party seeking advice to protect personal interests"). The privilege applies to confidential communications made to an attorney by both high-level agency personnel and lower-echelon employees. *Upjohn Co.*, 449 U.S. at 392–97, 101 S.Ct. 677.

▉▉▉ The defendants invoke the attorney-client privilege for various documents drafted by or sent to FDA attorneys concerning various legal matters.[10] The defendants' invocation of the attorney-client privilege is proper because these documents all pertain to "communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." *Mead Data*, 566 F.2d at 252.[11]

### 3. Exemption 6 Withholdings

▉▉▉ Exemption 6 of FOIA exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). "[S]imilar files" are broadly defined to include any "[g]overn-

---

10. Specifically, these documents are e-mails from an agency attorney discussing the bioequivalence of approved and unapproved LEVO drugs, *Vaughn* Index, doc. no. 194, attorney recommendation for enforcement action against LEVO manufacturer, *id.* at doc. nos. 233, 240, 241, 242, 245, 246, FDA's attorneys' handwritten notes concerning meeting with FDA chemists and communications with expert pharmacists in anticipation of litigation, *id.* at doc. nos. A33–A35, A40, A42, electronic e-mail communications between FDA attorneys regarding Jerome Stevens' lawsuit against the FDA, *id.* at doc. nos. A36, A37–39, A41, a letter from the OCC concerning an investigation of Warner Lam-

bert Company, *id.* at doc. nos. A100, A133a, draft document titled "Indictment" and prepared for filing in a criminal case in the United States District Court for the District of Maryland, *id.* at doc. no. A102, and memoranda of interview of Warner Lambert Co. employees, *id.* at doc. nos. A116–A132, A134–A159.

11. Because the court holds that these documents are properly withheld under the attorney-client privilege, the court need not entertain the defendants' attorney work-product privilege claim. *Kanter v. Dep't of State*, 479 F.Supp. 921, 928 n. 9 (D.D.C.1979).

ment records on an individual which can be identified as applying to that individual." *See U.S. Dep't. of State v. Wash. Post Co.,* 456 U.S. 595, 601–602, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982). To determine whether a disclosure would constitute a clearly unwarranted invasion of personal privacy, the court must weigh the privacy interests in nondisclosure against the public interests in disclosure. *Nat'l Ass'n of Home Builders v. Norton,* 309 F.3d 26, 32 (D.C.Cir.2002) (citing *Nat'l Ass'n of Retired Fed. Employees v. Horner,* 879 F.2d 873, 874 (D.C.Cir.1989)). Individuals have a privacy interest in personal information even if it is not of an embarrassing or intimate nature. *See Wash. Post,* 456 U.S. at 600, 102 S.Ct. 1957 (stating that "information such as place of birth, date of birth, date of marriage, employment history, and comparable data is not normally regarded as highly personal, and yet . . . such information . . . would be exempt from any disclosure that would constitute a clearly unwarranted invasion of personal privacy"). The quantum of the public's interest in disclosure depends on the degree to which disclosure would shed light on an agency's performance of its statutory duties and its compliance with the law. *Reed v. NLRB,* 927 F.2d 1249, 1252 (D.C.Cir.1991). In assessing the public interest, the court must examine "the nature of the requested document and its relationship to the basic purpose of [FOIA] to open agency action to the light of public scrutiny . . . [and official] information that sheds light on an agency's performance of its statutory duties" merits disclosure. *Reporters Comm.,* 489 U.S. at 773, 109 S.Ct. 1468 (citation omitted). The purposes of FOIA are "not fostered," however, "by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct." *Id.*

█ The defendants invoke Exemption 6 to exclude from production documents 203, 263, 265, 268, 269, 271, 274–279, 281–284, 289, 327, 411, 413, 414, 417, 725, 427, 436, 438, 447, Sagar Decl. ¶ 41, and A2–A4, A9, A12–A16, A19–A21, A24, A26–A28, A30, A31, A44, A46–A49, A57, A58, A60, A61, A66, A67, A71, A72, A75, A76, A103, A109, A110, A112, A113, A115, A116–A132, and A134–A159, Sheehan Decl. ¶ 26.[12] These documents contain information that could lead to the "identity of the interviewees and certain other individuals whose names appear in the memoranda of interviews created during the criminal investigation of Warner Lambert, such as their names, biographical information related to their employment, education, or medical history, and their specific duties or titles held at the company." *Id.* ¶ 27. Also, these documents contain the names of lower-level employees of intervenor Abbott Laboratories. Intervenor Abbott Mot. for Summ. J. at 34. These documents, in other words, contain the type of private information that is properly withheld under Exemption 6. *See Wash. Post,* 456 U.S. at 600, 102 S.Ct. 1957. These documents, in addition, concern interviews created during criminal investigations. Sheehan Decl. ¶ 26. As such, the release of this information would constitute a significant deprivation of a privacy interest. *See Reporters Comm.,* 489 U.S. at 762–63, 109 S.Ct. 1468. The court must balance this privacy interest against the plaintiff's interest in the information. *Nat'l Ass'n of Home Builders,* 309 F.3d at 32. Although

---

**12.** The defendants also invoke FOIA Exemption 7(c) to justify the withholding of documents A116–A132, and A134–A159. Because the court concludes that these documents are properly withheld under Exemption 6, it need not entertain the defendants' alternative justification. *See Kanter,* 479 F.Supp. at 928 n. 9.

the plaintiff does not demonstrate that the public has an interest in the information, the plaintiff states that he will use the information to expose the fact that the "FDA is the Grand Inquisitor controlling the process of expurgation of documents with no system of checks and balances." [13] Pl.'s Opp'n ¶ 45. In all likelihood, however, Dostoevsky did not have the FDA or the plaintiff in mind when he created *The Brothers Karamazov*. And regardless, the "system of checks and balances" to which the plaintiff references has been adequately struck by the Supreme Court, which has made clear that the general public interest in shedding light on the agency's performance, which the plaintiff alludes to, albeit circuitously, "falls outside the ambit of the public interest that the FOIA was enacted to serve." *Reporters Comm.*, 489 U.S. at 775, 109 S.Ct. 1468 (holding that the public's interest in information pertaining to a criminal investigation is not within Congress' purpose in creating the FOIA).

## D. Segregability

 FOIA mandates that "any reasonable segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). By 1977, it had "long been the rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. Dep't of*

*Air Force*, 566 F.2d 242, 260 (D.C.Cir. 1977). The D.C. Circuit has made clear that "the 'segregability' requirement applies to all documents and all exemptions in the FOIA." *Ctr. for Auto Safety v. Envtl. Prot. Agency*, 731 F.2d 16, 21 (D.C.Cir.1984). In fact, the segregability requirement is so essential to a FOIA inquiry that "it is error for a district court to simply approve the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Schiller*, 964 F.2d at 1210 (D.C.Cir.1992) (quoting *Church of Scientology v. Dep't of Army*, 611 F.2d 738, 744 (9th Cir.1979)).

 To demonstrate that the withholding agency has disclosed all reasonably segregable material, "the withholding agency must supply a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *King v. Dep't of Justice*, 830 F.2d 210, 224 (D.C.Cir.1987) (internal citation omitted). The agency, however, is not required to provide so much detail that the exempt material would be disclosed. *Mead Data*, 566 F.2d at 261. Furthermore, conclusory language in agency declarations that do not provide a specific basis for segregability findings by a district court may be found inadequate. *Animal Legal Def. Fund, Inc. v. Dep't of Air Force*, 44 F.Supp.2d 295, 301 (D.D.C. 1999). The D.C. Circuit, though expressly

---

**13.** In the course of this litigation, the defendants have produced numerous documents to the plaintiff. But, alas, the stream of production must at some point come to an end. *See, e.g.*, DOSTOEVSKY, THE GRAND INQUISITOR, 36 (Charles Guignon ed., Constance Garnett trans., Hackett Publishing 1993) (1879) (following the Grand Inquisitor's pontifications to the Prisoner, Ivan, upon being asked by Alyosha "how does your poem end?" states, "[w]hen the Inquisitor ceased speaking, he waited some time for his Prisoner to answer

him ... The old man longed for Him to say something, however bitter and terrible. But He suddenly approached the old man in silence and softly kissed him on his bloodless, aged lips. That was all his answer. The old man shuttered"). Thus, assuming *arguendo* that the FDA is, in fact, the Grand Inquisitor as the plaintiff suggests, there would still come a point at which the subject (be it the plaintiff or the prisoner) would receive no more information from the Grand Inquisitor. That point, the court rules, has now come.

disclaiming any attempt to provide "an encompassing definition of 'conclusory assertions,'" noted that "it is enough that where no factual support is provided for an essential element of the claimed privilege or shield, the label 'conclusory' is surely apt." *Senate of Puerto Rico v. Dep't of Justice,* 823 F.2d 574, 585 (D.C.Cir.1987).

From the sworn statements attesting to the FDA's compliance with the segregability requirement, Sager Decl. ¶ 43, Beckerman Decl. ¶ 17, Sheehan Decl. ¶ 33, the detailed explanation set forth in the defendants' supplied *Vaughn* Index, and the detailed supplemental *Vaughn* Index supplied by intervenor Abbott, the FDA has provided a "relatively detailed justification" that it has disclosed all reasonably segregable material. For example, the defendants, in partially disclosing document 236 pursuant to Exemption 4, withheld only the "name of consultant/third-party contractor." *Vaughn* Index, Doc. No. 236; *See* Sheehan Decl. ¶ 33. Thus, the defendants have satisfied their burden of demonstrating that all reasonably segregable information has been disclosed.

## IV. CONCLUSION

For the foregoing reasons the court grants the defendants' motion for summary judgment. An order consistent with this Memorandum Opinion is separately and contemporaneously issued on this 21st day of August, 2006.