**SERONO LABORATORIES, INC., Plaintiff,**

v.

**Donna E. SHALALA, et al., Defendants**

and

**Ferring Pharmaceuticals Inc., Intervenor–Defendant.**

Civ.A. No. 97–1227 (SS/JMF).

United States District Court, District of Columbia.

Jan. 21, 1999.

Terry S. Coleman, Bruce S. Manheim, Matthew David Peterson, Fox, Bennett & Turner, Washington, DC, for Plaintiff.

Drake Stephen Cutini, Jeffrey Bruce Chasnow, U.S. Dept. of Justice, Office of Consumer Litigation, Washington, DC, for Defendants.

Wayne Hayden Matelski, Arent, Fox, Kintner, Plotkin & Kahn, Washington, DC, for Organon, Inc.

David F. Weeda, Arthur YaShih Tsien, John R. Fleder, Olsson, Frank & Weeda, P.C., Washington, DC, for Ferring Pharmaceuticals, Inc.

## MEMORANDUM TO ACCOMPANY ISSUANCE OF PROTECTIVE ORDER

FACCIOLA, United States Magistrate Judge

The background of this case is set out at length in the Court of Appeals's decision, vacating the issuance of a preliminary injunction. *Serono Laboratories, Inc. v. Shalala,* 158 F.3d 1313 (D.C.Cir.1998). Suffice to say here that Serono Laboratories ("Serono") filed a petition urging the Federal Drug Administration ("FDA") to withhold the approval of an application by Ferring Pharmaceuticals ("Ferring") for the approval of a generic version of a drug which Serono markets. When the FDA denied Serono's petition, Serono sued it in this Court and Ferring intervened as a defendant. This Court issued a preliminary injunction against FDA approving Ferring's application but, as just noted, the Court of Appeals reversed concluding (*inter alia*) that Serono had not met its burden of a likelihood of success on the merits. Despite that conclusion, the Court of Appeals specifically left open the possibility that Serono could make outs its case that FDA approval of Ferring's application was arbitrary, capricious and unreasonable:

> For the foregoing reasons, we vacate the preliminary injunction entered by the district court and remand the case for further proceedings consistent with this opinion. Our opinion does not foreclose the possibility that at a trial on the merits, and upon a fuller record, Serono may be able to establish that there are grounds for overturning the grant of Repronex's ANDA [*i.e.* the drug for which Ferring sought ADA approval.] We hold only that upon the current record, Serono has failed to establish

that it meets the criteria for the grant of a preliminary injunction.

*Id.* at 1327.

Since the matter was remanded for a trial, the first item on the agenda is to assemble the administrative record. FDA secured from Serono, Ferring and other companies documents which each of these companies claims are trade secrets. FDA does not deny that it has a statutory obligation to protect these trade secrets and expresses a willingness to comply with any protective order the court issues. For their part, Serono and Ferring differ as to the contents of such an order based on radically different interpretations of the decision of the Court of Appeals in *MD Pharmaceutical, Inc. v. Drug Enforcement Admin.*, 133 F.3d 8, 13–15 (D.C.Cir.1998) (hereafter *"MD"*). In that case the Court of Appeals upheld a federal agency's producing an administrative record, to be used in the judicial review of that agency's decision, which did not contain all of the documents which the agency had in fact collected in making its decision because the agency had purged materials containing trade secrets. Ferring finds in that decision a judicially enforceable statutory right to insist that the FDA purge from the administrative record its trade secrets before any one can see the record. Serono does not see that case as an impediment to its outside counsel [1] reviewing the entire administrative record, including Ferring's trade secrets, provided his access and subsequent use and reference to what he has seen is carefully restricted by a protective order.

The argument between Ferring and Serono is animated by two competing concerns or interests. In a field as competitive and technical as the pharmaceutical industry, success or failure will turn in large measure on innovation and the members of the industry justifiably hoard their trade secrets as jealously as a miser hoards his gold. Before, however, that innovation yields a profit, a government agency has the responsibility to insure that the drug is safe. In a world of stunning multiple births, cloning, and genetic engineering, the necessity for the performance of that responsibility being predicated on all available information is self evident.[2] Thus, concerned companies may have to disgorge their trade secrets so that the agency can fulfill its responsibilities. They would resist doing so with all their power if doing so permitted their competitors instantaneous access to what they had so carefully guarded from them. The obvious public interest in inducing the drug companies' utmost cooperation with the government's investigation of the new drug would suffer. It is therefore understandable that Congress has required the FDA to guard the trade secrets to which it has been given access and to require it to return them to the company which generated them. 21 U.S.C. § 331(j) (Supp.1998); 5 U.S.C. § 552(b)(4) (1996) (trade secrets exempt from Freedom of Information Act); 18 U.S.C. § 1905 (1984) (crime for federal employee to disclose trade secrets).

A competing consideration is that judicial review of agency action must be premised on the administrative record and, in the ordinary course, a complete agency record is *sine qua non;* without it the party seeking review can claim that its right to attack the agency's action is compromised since it cannot say with certainty what the agency reviewed in making its decision. 5 U.S.C. § 706 (1996) (when conducting judicial review court is to review the whole record).

The fundamental difference between Serono and Ferring is in their interpretation of the meaning of the Court of Appeals decision in *MD*. In that case the Court of Appeals held that the DEA was within its statutory powers when it refused to permit a particular party which was challenging that agency's action from seeing certain documents which were part of the administrative record on which the agency action was premised be-

---

1. Outside counsel refers to private law firms hired by either Serono or Ferring for specific matters and in-house counsel refers to attorneys permanently on the corporation's payroll.

2. The importance of agency review of drugs sought to be introduced into the stream of commerce can be summarized in a single word, Thalidomide. Thanks to governmental regulation, this drug was not permitted to be sold in the United States. It was sold in Great Britain and the children whose mothers ingested it were born with serious deformities.

cause those documents would have revealed trade secrets. Since that case would support the conclusion that trade secrets need not be disclosed Serono would distinguish it by arguing that (1) in this case the agency is not insisting upon any right to withhold any documents but is ready to permit any one to see even trade secrets the moment the Court issues a protective order and (2) in that case the Court of Appeals did not have before it a proposed protective order pertaining to the trade secrets and the case therefore cannot be read to bar limited access under that order if that access is necessary for a party to perfect its right to a full administrative record in its challenge to agency action.

Ferring counters this case can only be read to create a judicially enforceable right of a party who has provided an agency with trade secrets to insist upon their removal before the administrative record is produced for inspection by any one, particularly one of its competitors.

Ironically, counsel for Ferring, which resists disclosure of its secrets to Serono, was counsel for the losing party in *MD* in which he had urged that his client's interest in the production of a complete administrative record rendered the agency's exclusion of certain records a default of its clear obligation to produce that complete administrative record for judicial review. He provided me with the briefs of the parties in *MD* and they are illuminating. The losing party, seeking disclosure of the trade secrets, insisted that its interest in a complete administrative record trumped the agency's protecting trade secrets and chastised the agency for not considering whether disclosure could not occur pursuant to a protective order. Brief for Petitioner at 26–29, *MD Pharmaceutical, Inc. v. Drug Enforcement Admin.*, 133 F.3d 8, 13–15 (D.C.Cir.1998). The Court of Appeals, however, rejected those arguments in favor of the creation of an absolute agency right to delete from the administrative record trade secrets. It therefore expressly held that the statutory protection afforded trade secrets trumps the interest in a complete administrative record. Moreover, while its decision did not specifically discuss the significance of a potential proposed order,

the agency's withholding trade secrets, despite the criticism that it had done so without even considering whether disclosure could take place pursuant to a protective order, was upheld as a lawful exercise of its obligation to protect trade secrets. Implicit in that determination is the concomitant holding that the statutory protection of trade secrets creates an enforceable right in the party who has provided those secrets to insist upon their exclusion from the administrative record which does not evaporate merely because there is a possibility that a protective order might regulate the access which the agency is under an obligation to prevent. There was before the Court of Appeals, after all, a suggestion that a protective order could accommodate the competing interests. The breadth of the Court of Appeals' holding in the light of that suggestion must mean that a party who had provided trade secrets cannot be forced to permit any access to them whatsoever because it is under no obligation to accept less than the absolute protection the statute creates for its trade secrets.

It is therefore of little moment that the agency in this case is willing to permit access to trade secrets pursuant to a protective order. In *MD*, the Court of Appeals held that the agency's refusal to produce trade secrets was the correct interpretation of the statute protecting those secrets despite the claim that its protection of those secrets was inconsistent with its obligation to produce a complete administrative record. It has to follow that an agency's refusing to remove the trade secrets from the administrative record before permitting the disclosure of that record to any one other than the party which produced the secrets is an incorrect reading of the statute which protects trade secrets. If that is so, the agency's permitting the very disclosure which the Court of Appeals indicated the trade secret statute does not permit is agency action which is arbitrary, capricious and unreasonable and contrary to law which this Court is bound, by another statute to prevent. 5 U.S.C. § 706(2)(A) (1996). Therefore, Ferring is perfectly correct in insisting that the agency in this case must purge the administrative record of Ferring's trade secrets before its files the administrative record for review by

any one else and that a protective order restricting access to those secrets cannot excuse the FDA from fulfilling its statutory obligation to protect Ferring's trade secrets. Simply put, the protective order cannot relieve FDA from a statutory obligation it has to Ferring and permit it to abrogate a statutory right Ferring can assert.

A judge, anxious to see this matter come to a conclusion as soon as possible, reaches this necessary conclusion with some reluctance since it will require the FDA to create three versions of the administrative record, an unexpurgated record which contains the entire record and a version from which Ferring's trade secrets have been removed to be given to Serono, and a version from which Serono's trade secrets have been removed to be given to Ferring. While that obligation is unquestionably onerous, Serono need not wait and suffer in silence. This Court has plenary power to expedite agency action which is unreasonably delayed[3] and will do so if Serono can make a case that the amount of time being taken to create the purged records is out of proportion to the task involved.

Additionally, while it bears more on accuracy than speed, I expect the FDA to make a conscientious determination as to whether a document does in fact contain what can truly be described as a trade secret in light of the present state of the technology involved. To continue to describe information as a trade secret when, for example, it describes a process now in the public domain, would be arbitrary and capricious and subject to nullification upon judicial review. I intend to exercise such review upon the application of Serono which will be provided with a log which will describe the documents being sought with enough particularity to permit Serono to challenge their continuing designation as trade secrets. While that log can never be a substitute for examination of the documents themselves, Serono's position is no better or worse than any litigant who confronts a claim of privilege. *Cf.* Fed. R.Civ.P. 26(a)(5). I also appreciate that I may lack the technical expertise to determine whether a document contains a trade secret

but I contemplate the parties calling witnesses in support of their contentions and even assisting me to secure assistance from an utterly independent source if it becomes necessary to do so.

Finally, the order contemplates that there will be documents which, while not trade secrets and therefore to be purged from the administrative record without further ado, may nevertheless contain information which should only be seen by certain persons. Serono would classify this documents as either "confidential" or "highly confidential" and then restrict access to them accordingly. I have rejected this proposal as premature and unnecessarily complicated. In the course of exercising the judicial review the order contemplates I will unquestionably entertain any argument that access, if it is permitted, be permitted only to certain persons or categories of persons. I am much more comfortable making that judgment as to a particular document when I look at the document and hear the parties' arguments. It is not a good idea to try to make lapidary judgments about documents which I have not seen or to attempt to categorize them *a priori* without seeing them.

A final point. Documents from two companies, Organon and Instituto Massone, are part of the administrative record. At a hearing Judge Sporkin ordered that these documents be purged from the administrative record before any portion of the remainder of that record was made available to Serono. Despite Serono's invitation, I do not see myself as having any authority to modify that order. Thus, I have ordered that the FDA purge the confidential matter of both Organon and Instituto Massone in accordance with Judge Sporkin's order but also create a list of the documents they are removing. In addition, I have created a procedure whereby Instituto Massone and Organon may object to the production of this list I have ordered the FDC to create before this list may be disseminated to anyone other than counsel for Instituto Massone and Organon. At that time, I will certainly consider any argument Instituto Massone or Organon may assert to

---

**3.** 5 U.S.C. § 706(1) (1996)

making the list available to Serono or Ferring, including the argument that the production of the list itself is in excess of or inconsistent with Judge Sporkin's order.

### PROTECTIVE ORDER

Upon consideration of the proposed Protective Orders submitted by Plaintiff Serono Laboratories, Inc. ("Serono") and by Intervenor–Defendant Ferring Pharmaceuticals Inc. ("Ferring"), the response of Defendants Shalala, et al. ("FDA"), and the entire record herein, it is hereby

ORDERED THAT FDA shall make the administrative record relating to approval of the abbreviated new drug application ("ANDA") for Repronex™ available to the Court, Serono, and Ferring pursuant to the following provisions.

1. "Private party" or "private parties" means Ferring, Serono, or both, as appropriate.

2. "Third party" or "third parties" means Organon, Inc. ("Organon"), Instituto Massone, or both, as appropriate.

3. "Confidential Matter" means a person's valuable trade secrets or confidential commercial information that has been submitted to FDA that, if disclosed to other persons, would likely cause substantial harm to the competitive position of the person.

4. The "Complete Administrative Record" means the entire, unpurged administrative record of the Repronex™ ANDA approval.

5. The "First Purged Administrative Record" means the Complete Administrative Record, after Confidential Matter belonging to third parties has been purged by the FDA in accordance with this order.

6. The "Final Purged Administrative Record" means the First Purged Administrative Record, after Confidential Matter belonging to Ferring and Serono has been purged in accordance with this order.

7. Within thirty days of the issuance of this order, the FDA shall prepare: (i) the Complete Administrative Record with sequentially numbered pages; and (ii) the First Purged Administrative Record by purging Confidential Matter relating to third parties, including all Confidential Matter derived from the New Drug Application for Humegon® of Organon and the Drug Master File of Instituto Massone) from the Complete Administrative Record. Upon completion of the First Purged Administrative Record, FDA shall deliver to counsel for Organon and Instituto Massone, and all counsel of record for the parties, a written notice indicating that all such information has been purged in accordance with this paragraph.

8. The FDA shall prepare a list of the documents which have been purged and identify, to the extent reasonably practicable, the nature and general content of any documents that have been purged in their entirety from the Complete Administrative Record because the FDA concluded they were confidential matter belonging to either Organon or Instituto Massone. This list shall *only* be distributed to counsel for Organon and Instituto Massone. Organon and Instituto Massone shall have five business days to review the list and, if they believe anything in the list reveals confidential matter, they may object to that portion of the list being disclosed. If objections are made, a hearing shall be scheduled before Magistrate Judge Facciola to determine if the list does in fact contain confidential matter and to consider any other objection made by Instituto Massone and Organon. If there are no objections within five working days after the list has been provided to Organon and Instituto Massone then the FDA shall distribute the list to the private parties.

9. Should Serono or Ferring later conclude, based on a review of the Purged Administrative Record or the list provided by the FDA (if it should be made available to them), that good cause exists to seek access to certain of the

**6**

purged parts of the Complete Administrative Record containing information relating to Organon, that private party shall specify those parts of the Complete Administrative Record desired and the asserted reason for inclusion, and FDA shall release to Organon those parts of the Complete Administrative Record that Serono or Ferring specified. Serono or Ferring shall then consult with counsel for Organon in an attempt to obtain counsel's agreement to the release of any additional information. Similarly, should Serono or Ferring later conclude, based on a review of the First Purged Administrative Record, that good cause exists to seek access to certain of the purged parts of the Complete Administrative Record containing information relating to Instituto Massone, that private party shall specify those parts of the Complete Administrative Record desired and the asserted reason for inclusion, and FDA shall release to Instituto Massone those parts of the Complete Administrative Record that Serono or Ferring specified. Serono or Ferring shall then consult with counsel for Instituto Massone in an attempt to obtain counsel's agreement to the release of any additional information. Should agreement with counsel for Organon or Instituto Massone not be possible, Serono or Ferring may then file an application with the Court requesting a hearing. Counsel for Organon and Instituto Massone shall be served with copies of any such application on the same date that the application is filed with the Court. If such an application is filed with the Court, there will be a hearing before Magistrate Judge Facciola to determine whether any of the persons designated in paragraph 17 shall have access to the purged matter. Counsel for Organon or Instituto Massone may fully participate in that hearing.

10. If, upon review of the record covered by this Protective Order, outside counsel determine that a document included in the Complete Administra-tive Record relates to a product manufactured by Lederle Parenterals, Inc. or any other division of American Home Products Corporation other than the products at issue in this litigation, such document shall not be shared with persons other than outside counsel unless and until notice has been provided to American Home Products and that company has been provided a reasonable opportunity to seek a protective order with respect to such document. If, however, a document relates both to a product at issue in this litigation and a product manufactured by an American Home Products' division that is not at issue in this litigation, counsel may share that document with other persons covered by this Protective Order after redacting the information relating to the American Home Products' product.

11. Ten (10) days after the FDA gives written notice of the completion of the First Purged Administrative Record, the FDA shall provide to counsel for Ferring copies of the documents in the First Purged Administrative Record belonging to Ferring only and shall provide to Serono copies of the documents in the First Purged Administrative Record belonging to Serono only.

12. Within ten (10) business days after the receipt of the documents under the preceding paragraph, counsel for Serono and Ferring shall each determine whether its own documents contain Confidential Matter. Each page of those documents that contains Confidential Matter shall be prominently stamped by counsel for the private party owning the Confidential Matter as "Confidential—Subject to Court Order." All documents shall be returned to the FDA within 10 business days either stamped as confidential or with a notation that this document is not confidential.

13. Those documents not stamped confidential will not be covered by the protective order.

14. In regard to the documents marked confidential, the private parties shall have ten (10) business days, upon returning the documents to the FDA, to file objections with this Court and the other party to any document it deems to be too highly confidential to disclose to anyone or to certain persons. Upon receipt of any objections, the other party shall then specify, with particularity, all persons who, it claims, should be permitted access, or limited access. This party shall provide the names, business addresses, professions or occupations and present or past affiliations of all such persons with the objecting party. If an objection has been made regarding access to any expert, the other party shall submit the aforementioned information and shall additionally submit that expert's curriculum vitae. Within five (5) business days of receipt of this information, the party shall either withdraw the objections or schedule a hearing with Magistrate Judge Facciola.

15. If the objections are not withdrawn, there will be a hearing before Magistrate Judge Facciola to determine who, if anyone, shall be permitted access (in whole or in part) to these documents due to the confidential nature of the information contained in them. If the Court determines that the losing party was not substantially justified in its position that access should be denied or only permitted certain persons, that party shall be required to pay costs and attorney's fees as ordered by the Court.

16. Except as modified pursuant to an Order entered under the preceding paragraph, the FDA shall, within five (5) business days of receiving the documents back from Serono and Ferring, provide the Final Purged Administrative Record to the private parties' who shall permit access to them only in accordance with this order or any other order issued by the Court. FDA shall file with the Court the Final Purged Administrative Record, with those portions stamped "Confidential—Subject to Court Order" being filed under seal.

17. Except as otherwise provided by any other order issued by this Court, access to documents stamped "Confidential—Subject to Court Order" in the Final Purged Administrative Record shall be limited to:

a) counsel for the private parties, whether inside or outside counsel, unless properly objected to pursuant to paragraphs 14 & 15, including their legal assistants and administrative staff, and duplicating services;

b) scientific experts for the private parties, whether employees of the parties or outside experts, unless objected to pursuant to paragraphs 14 & 15;

c) the Court, including court personnel.

18. An individual with authorized access to these documents shall not have access to any document stamped "Confidential—Subject to Court Order" in the Final Purged Administrative Record unless and until such individual has agreed in writing to be bound by the terms of this Order and a copy of such agreement has been transmitted to counsel for the other parties. The requirement for such written agreement shall be satisfied by obtaining the signature of each such individual at the end of a copy of this Order below the words: "I have read and fully understand this Protective Order. I agree to comply with and be bound by the terms of this Protective Order. I agree not to disclose any documents marked 'Confidential—Subject to Court Order' or the contents of those documents, to any person other than those specifically authorized by the Order. I hereby submit to the jurisdiction of the Court for the purpose of ensuring compliance with the Order." I fur-

ther understand that the information contained in the documents is valuable and strictly confidential. I further appreciate that if I violate this order I may be held in contempt of court, imprisoned or fined.

19. Individuals authorized access to documents stamped "Confidential—Subject to Court Order" in the Final Purged Administrative Record shall use such information only for purposes directly related to this litigation and shall not disseminate or discuss the contents of such documents in the Final Purged Administrative Record with any person not authorized under paragraph 17 or by order of the Court, except that: (i) nothing shall prevent representatives of each private party from using the Confidential Matter belonging to that party without restriction; and (ii) the terms of this Protective Order shall not apply to any disclosure of those portions of the Final Purged Administrative Record containing Confidential Matter by the FDA to its employees, agents, or attorneys pursuant to its regulations and policies and in the normal course of business.

20. Except for copies filed with the Court, all copies of documents stamped "Confidential—Subject to Court Order" shall be maintained in a secured and locked area allowing access only as permitted by this order or any other order issued pursuant to it. If the documents are transmitted to persons authorized to receive the documents, the receiver is responsible to ensure that the documents are maintained in a locked and secured location when not in use. Failure to do so will be deemed a violation of this order. The receiver also understands the responsibility undertaken by this protective order pursuant to paragraph 18.

21. Whenever any Confidential Matter is presented, quoted, referred to, or otherwise disclosed in any exhibit, affidavit, declaration, pleading, brief, memorandum, or other document filed with the Court or otherwise exchanged among the parties, that portion of such document shall, if filed with the Court, be filed under seal, and shall not be made available to persons other than those authorized by this Protective Order or any subsequent Order of this Court.

22. The parties shall comply with Local Rule 106(j) of the Court governing filing of sealed or confidential documents.

23. Failure to designate any information as Confidential Matter shall not be construed to be a waiver of confidentiality or an admission concerning the legal or commercial value of the information for purposes outside of this litigation. Failure to challenge a designation of Confidential Matter when made shall not preclude a subsequent challenge.

24. The inadvertent or unintentional disclosure of any document marked "Confidential—Subject to Court Order" shall not be construed to be a waiver of confidentiality.

25. The restrictions set forth in this Protective Order shall not apply to a private party's use or retention any material in the Final Purged Administrative Record marked "Confidential—Subject to Court Order" that:

(a) Was, is, or becomes public knowledge in a manner other than by violation of this Order;

(b) At the time of disclosure to a private party pursuant to this Order, was possessed by such private party; or

(c) Thereafter is lawfully obtained by a private party other than through review of any part of the Final Purged Administrative Record disclosed under this Order.

26. At the conclusion of this litigation, all documents from the Final Purged Administrative Record marked "Confidential—Subject to Protective Order" obtained pursuant to this Protective Order, except copies filed under seal

with the Court, shall be returned to FDA or promptly destroyed by counsel for Serono and counsel for Ferring. Outside counsel for Serono and outside counsel for Ferring may each retain a copy of such documents from the Final Purged Administrative Record and copies of all submissions to the Court and communications among the parties that refer to or include documents from the Final Purged Administrative Record. Serono and Ferring shall give written notice to all other parties within 30 days of the conclusion of this litigation that discloses the specific manner of disposition of all copies of documents in the Final Purged Administrative Record marked "Confidential—Subject to Court Order" and obtained pursuant to this Order.

27. The parties shall in good faith attempt to resolve disputes stemming from this Protective Order. Any remaining disputes shall be resolved by Magistrate Judge Facciola on the following expedited motion schedule: the party seeking relief shall serve on the other parties and file with the Court its motion; other parties shall file their responses within five (5) business days of service; any reply briefs shall be filed within two business days. If the Court determines that the losing party in any such motion was not substantially justified in its position, that party shall be required to pay costs and attorney's fees as ordered by the Court.

28. This Protective Order can be modified by further order of the Court.

29. This Protective Order shall survive the final conclusion of this litigation and continue in full force and effect, and the Court shall retain jurisdiction to enforce this Protective Order.

30. A breach of this Protective Order shall be subject to sanctions, in the discretion of the Court. These sanctions may include contempt of court, and may be imposed against a party or any other person. The minimum amount of sanctions imposed shall be $1,000.00. The sanction amount shall be paid by the person who has violated the protective order and shall not be reimbursed by any employer.

**SO ORDERED.**